Nos. 21-1811/21-2759

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

OMAR RASHAD POUNCY,

Petitioner-Appellee/Cross-Appellant,

v.

CARMEN DENISE PALMER, Warden

Respondent-Appellant/Cross-Appellee.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Matthew F. Leitman

**FIRST BRIEF FOR RESPONDENT-APPELLANT/CROSS-APPELLEE**

Dana Nessel
Michigan Attorney General

Ann M. Sherman (P67762)
Solicitor General

John S. Pallas
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Trials and Appeals
Division
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7650

Dated:    April 27, 2023

# TABLE OF CONTENTS

Page

Table of Authorities..................................................................................iv

Statement in Support of Oral Argument....................................................ix

Jurisdictional Statement............................................................................1

Statement of Issues Presented...................................................................4

Introduction.............................................................................................5

Statement of the Case...............................................................................7

I.      Factual History ...............................................................................7

II.     Procedural History .......................................................................10

Summary of Argument............................................................................15

Standard of review .................................................................................17

Argument...............................................................................................18

I.      Because AEDPA applies to the state trial court's decision
        denying Pouncy relief on his *Strickland/Lafler* claim, the
        District Court erred in conducting de novo review and
        holding a federal evidentiary hearing on the claim.  The
        state court adjudication rejecting the claim on the merits
        was not objectively unreasonable. ................................................18

        A.      The District Court erred in reviewing the issue de
                novo, and this failure to apply the correct standard of
                review cannot be waived. ....................................................19

        B.      The District Court erred in conducting an evidentiary
                hearing on the *Strickland/Lafler* issue and should not
                have considered evidence presented at that hearing...........25

C. Under AEDPA review, Pouncy has not shown that the state trial court's rejection of his *Strickland/Lafler* claim was objectively unreasonable......................................28

    1. The *Strickland/Lafler* framework requires proof of deficient performance and prejudice in the plea setting................................................................29

    2. Applying AEDPA deference, the state trial court's decision rejecting Pouncy's *Strickland/Lafler* claim was not objectively unreasonable as his counsel was not deficient. ...........................................32

    3. Applying AEDPA deference, the state trial court's decision rejecting Pouncy's *Strickland/Lafler* claim was not objectively unreasonable as there was no prejudice.......................................................36

II. Even if de novo review – rather than AEDPA review – applies to Pouncy's *Strickland/Lafler* claim, the District Court erred in granting Pouncy habeas relief on that claim ........41

A. The trial court's de novo findings and legal conclusions concerning deficient performance are clearly erroneous......43

    1. *Strickland* standing alone is a very deferential standard. ....................................................43

    2. The District Court erroneously relied on distinguishable circuit precedent in attempting to establish deficient performance...................................44

B. The District Court's de novo findings and legal conclusions concerning prejudice are clearly erroneous. ......48

    1. Pouncy's completely incredible testimony at the federal evidentiary hearing does not establish the requisite prejudice.......................................................49

2. Investigator Leonard Accardo's inconsistent, contradictory testimony at the federal evidentiary hearing does not establish the requisite prejudice. ....57

3. The testimony of the state prosecutor, Christopher Larobardiere, at the federal evidentiary hearing does not support the District Court's finding that Pouncy was prejudiced. .............58

Conclusion and Relief Requested............................................................64

Certificate of Compliance.......................................................................65

Certificate of Service .............................................................................66

Designation of Relevant District Court Documents.............................67

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Amado v. Gonzalez,*
   758 F.3d 1119 (9th Cir. 2014) .............................................................24

*Anderson v. City of Bessemer City,*
   470 U.S. 564 (1985) ..............................................................................42

*Ballinger v. Prelesnik,*
   709 F.3d 558 (6th Cir. 2013) ...............................................................26

*Baxter v. Palmiagano,*
   425 U.S. 308 (1976) ..............................................................................51

*Bell v. Cone,*
   535 U.S. 685 (2002) ..............................................................................31

*Bourne v. Curtin,*
   666 F.3d 411 (6th Cir. 2012) ...............................................................26

*Bousley v. U.S.,*
   523 U.S. 614 (1998) ..............................................................................41

*Brown v. Romanowski,*
   845 F.3d 703 (6th Cir. 2017) ...............................................................24

*Byrd v. Skipper,*
   940 F.3d 248 (6th Cir. 2019) ........................................................37, 55

*Cullen v. Pinholster,*
   563 U.S. 170 (2011) ......................................................26, 27, 30, 31

*Durr v. Mitchell,*
   487 F.3d 423 (6th Cir. 2007) ...............................................................31

*Faretta v. California,*
   422 U.S. 806 (1975) ..............................................................................13

*Glebe v. Frost,*
    574 U.S. 21 (2014) ............................................................... 35

*Greene v. Fisher,*
    565 U.S. 34 (2011) ............................................................... 28

*Hanna v. Ishee,*
    694 F.3d 596 (6th Cir. 2012) ............................................... 42

*Harrington v. Richter,*
    562 U.S. 86 (2011) ..................................................... passim

*In re Liddell,*
    722 F.3d 737 (2013) ............................................................ 29

*Johnson v. Williams,*
    568 U.S. 289 (2013) ..................................................... 20, 21

*Julian v. Bartley,*
    495 F.3d 487 (7th Cir. 2007) ....................................... 35, 47

*Kernan v. Cuero,*
    138 S. Ct. 4 (2017) .............................................................. 35

*Knowles v. Mirzayance,*
    556 U.S. 111 (2009) ............................................................ 32

*Lafler v. Cooper,*
    566 U.S. 156 (2012) ..................................................... 15, 31

*Lee v. United States,*
    137 S. Ct. 1958 (2017) ........................................................ 56

*Lopez v. Smith,*
    574 U.S. 1 (2014) ................................................................ 35

*Loza v. Mitchell,*
    766 F.3d 466 (6th Cir. 2014) ............................................... 27

*Marshall v. Rodgers,*
    569 U.S. 58 (2013) .............................................................. 35

*McKenzie v. Smith,*
  326 F.3d 721 (6th Cir. 2003) .............................................................. 42

*Metrish v. Lancaster,*
  569 U.S. 351 (2013) ........................................................................ 17

*Moore v. Mitchell,*
  708 F.3d 760 (6th Cir. 2013) .............................................................. 27

*Moritz v. Lafler,*
  525 F. App'x 277 (6th Cir. 2013) ........................................................ 24

*Moss v. United States,*
  323 F.3d 445 (6th Cir. 2003) ........................................... 35, 44, 45, 46

*North Carolina v. Alford,*
  400 U.S. 25 1970) .......................................................................... 63

*Padilla v. Kentucky,*
  559 U.S. 356 (2010) ........................................................................ 29

*Parker v. Matthews,*
  567 U.S. 37 (2012) .......................................................................... 20

*People v. Wolff,*
  389 Mich 398 (1973) ....................................................................... 63

*Pouncy v. Palmer,*
  846 F.3d 144 (6th Cir. 2017) ..................................................... 1, 13, 33

*Pouncy v. Palmer,*
  993 F.3d 461 (6th Cir. 2021 .............................................................. 53

*Sawaf v. United States,*
  570 F.App'x 544 (6th Cir. 2014) ......................................................... 38

*Schriro v. Landrigan,*
  550 U.S. 465 (2007 ........................................................................ 32

*Sheppard v. Bagley,*
  657 F.3d 338 (6th Cir. 2011) .............................................................. 27

*Skinner v. McLemore,*
   425 F. App'x 491 (6th Cir. 2011 ........................................................ 19

*Smith v. United States,*
   348 F.3d 545 (6th Cir. 2003) ............................................................ 38

*Strickland v. Washington,*
   466 U.S. 668 (1984) .............................................................. 15, 29, 31

*Thomas v. United States,*
   27 F.3d 321 (8th Cir. 1994 ................................................................ 32

*United States v. Grant,*
   15 F.4th 452 (6th Cir. 2021) ............................................................. 42

*United States v. Griffin,*
   330 F.3d 733 (6th Cir. 2003) ............................................................ 38

*United States v. Knight,*
   981 F.3d 1095 (D.C. Cir. 2020) ................................................... 35, 47

*Ward v. Stephens,*
   777 F.3d 250 (5th Cir. 2015) ............................................................ 24

*Wilson v. Parker,*
   515 F.3d 682 (6th Cir. 2008) ............................................................ 29

*Woods v. Donald,*
   575 U.S. 312 (2016) .......................................................................... 34

## Statutes

18 U.S.C. § 1623 ..................................................................................51

18 U.S.C. § 2 ........................................................................................51

18 U.S.C. § 201(b)(4) ...........................................................................51

18 U.S.C. § 271 ....................................................................................51

28 U.S.C. § 2254 ....................................................................................1

28 U.S.C. § 2254(d) .................................................................. 17

Mich. Comp. Laws § 750.224f ................................................ 10

Mich. Comp. Laws § 750.227b.................................................. 10

Mich. Comp. Laws § 750.529..................................................... 10

Mich. Comp. Laws § 750.529a................................................. 10

Mich. Comp. Laws § 769.11 ..................................................... 11

**Rules**

Mich. Ct. R. 6.301(B) .............................................................. 62

Mich. Ct. R. 6.302(D)(2)(a) ..................................................... 62

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The State requests oral argument pursuant to Fed. R. App. P. 34(a).  Argument will aid the Court in its decision-making process, as this case contains legal arguments and facts that are significant.  Due to the serious nature of Petitioner Omar Pouncy's convictions, the significant question as to whether the proper standard of review was applied in this habeas matter by the District Court, and the fact that this appeal arises from a grant of conditional habeas relief (for the second time), the State respectfully requests oral argument.

## JURISDICTIONAL STATEMENT

Petitioner-Appellee Omar Rashad Pouncy, a Michigan prisoner, commenced this action in the district court in 2013 (approximately a decade ago) under 28 U.S.C. § 2254 by filing a petition for a writ of habeas corpus, raising multiple claims for relief.

The District Court initially granted habeas relief to Pouncy on his claim that he was denied his right to counsel when he chose to represent himself under circumstances that rendered that choice involuntary.  (R. 76, Op. & Ord., Page ID # 6848-6880.)   On the Warden's appeal, this Court reversed that grant of habeas relief, and remanded the matter for proceedings on the remaining claims.   *See Pouncy v. Palmer*, 846 F.3d 144 (6th Cir. 2017).  Judge Clay dissented from the reversal.

On remand, the District Court addressed Pouncy's remaining habeas claims and again granted habeas relief to him, this time on his claim that he had been denied his right to the effective assistance of trial counsel relating to the plea-bargaining process (hereinafter referred to as the "*Strickland/Lafler*" claim).  (R. 401, Op. & Ord., Page ID # 14401-14435.)  The District Court denied Pouncy habeas relief on

his other remaining claims. (*Id.* at Page ID # 14368-14400 and 14435-14488.) It did, however, grant Pouncy a certificate of appealability on the claims on which it denied habeas relief to him. (*Id.* at 14489-14490.)

The Warden filed a notice of appeal (R. 409, Notice of Appeal, Page ID # 14627-14628). This Court assigned case number 21-2759 to that appeal.

The Warden also filed a motion in the District Court to stay the portion of the opinion conditionally granting Pouncy habeas relief pending the Warden's appeal. (R. 427, Motion to Stay, Page ID #14713-14738). The District Court granted the Warden's motion to stay. (R. 453, Ord., Page ID # 14956-14986).

Pouncy likewise filed a notice of appeal (essentially a claim of cross-appeal) from the portions of the District Court's opinion and order which denied him habeas relief. (R. 446, Notice of Appeal, Page ID # 14941-14942.) This Court assigned case number 21-1811 to that appeal

This Court entered an order on January 24, 2023, consolidating the two cases on appeal (a request that the Warden had made).

The Warden's appeal is from a final order in this habeas matter that disposed of all of the parties' claims.  As such, this Court has jurisdiction pursuant to U.S.C. §§ 1291, 2253.

## STATEMENT OF ISSUES PRESENTED

1.    AEDPA applies to state court merits adjudications of federal claims on habeas review.  Here, both the District Court and the parties mistakenly did not recognize that the state trial court adjudication at issue addressed the merits of Pouncy's *Strickland/Lafler* claim.  Can this Court now review the claim under AEDPA and, if so, was the state trial court's adjudication of the claim objectively unreasonable?

2.    Federal claims that are not adjudicated on the merits by a state court are not entitled to review under AEDPA and can be addressed de novo by a federal habeas court.  If this Court finds AEDPA inapplicable to resolving Pouncy's *Strickland/Lafler* claim, and that the District Court properly reviewed the claim de novo, did the District Court err in granting conditional habeas relief to Pouncy on the claim?

## INTRODUCTION

"I will never take the plea to nothin' I did 'cause I didn't do it."

This sentence was uttered by a defiant Omar Pouncy on-the-record before the state trial court on the day his case was scheduled to go to trial, following the prosecutor's offer to dismiss the habitual offender enhancement in return for Pouncy's plea to the charges against him in this very serious criminal case.

Pouncy got the trial he wanted, but it resulted in him being convicted as charged and sentenced in a way that prevents him from even being considered for parole until 2055.  Pouncy has spent over a decade and a half challenging his convictions and sentences in both state and federal court.

Despite his statement on the day of trial, Pouncy now claims that he would have taken a plea if it were not for the ineffectiveness of his trial attorney.  The District Court determined that this claim had merit—despite Pouncy's own contemporaneous words to the contrary—and for the second time, granted him conditional habeas relief.

Whether this claim is reviewed under the deferential standards of AEDPA, or de novo, the District Court should have denied the claim.

Under AEDPA, Pouncy loses.  And he even loses under de novo review where the evidence elicited at the federal evidentiary hearing can be considered.

Words matter.  As they should.  Pouncy's words uttered close to two decades ago as he faced trial should matter.  That is because they reflect his true feelings about taking a plea and undermine his self-serving post-conviction statements to the contrary.

This Court should reverse the District Court.

## STATEMENT OF THE CASE

### I.    Factual History

The Michigan Court of Appeals correctly and succinctly

summarized the underlying facts of this matter as follows:

Joseph Davis testified that Earl Brady brought a
Camaro drag-racing car to his racecar chassis fabrication
shop to display it for sale.  Approximately four or five days
before September 29, 2005, three men came to look at the
Camaro; one of them identified himself as "Jacob Woods."  At
trial, Davis identified defendant as "Jacob Woods" and noted
that he had been the one doing most of the talking.

Defendant came back a second time and then a third
time on the 29th.  On September 29th, defendant called
Davis and indicated that he was ready to make a deal, so
Davis called Brady and told him to come over.  Brady arrived
in his truck with his friend Patrick Wendell.  Defendant and
two other men showed up later in a grey Intrepid.  During
negotiations, defendant told Davis that he wanted to take
the Camaro to his mechanic at King Automotive.  Brady
agreed, loaded the Camaro onto a trailer attached to his
truck, and they all left.

At trial, both Brady and Wendell identified the
prospective buyer of the Camaro as defendant.  The group
arrived at a house where defendant said they would meet
the mechanic and defendant asked Brady to back the truck
into the driveway.  Defendant and Brady were discussing the
Camaro, when one of defendant's associates pulled out a gun
and demanded Brady's keys and cell phone.  When Brady
refused, the associate fired the gun up into the air; Brady
then complied.  The men also took Wendell's cell phone.  The
men told Wendell and Brady to walk across the street and
into the woods.  While in the woods, Brady and Wendell

heard the vehicles drive away.  Brady and Wendell walked to a nearby house and called the police.

Wayne Grimes, defendant's stepbrother, testified that he helped defendant commit the Brady carjacking.  Grimes testified that he owned an Intrepid, in which he drove defendant and defendant's friend, Tiaqua, to Davis's race shop on September 29, 2005.  After defendant spoke to some men about a car, defendant directed Grimes to drive to defendant's "engineer."  On the way, defendant told Grimes that he planned to "take" the cars and sell them, and Tiaqua handed Grimes a gun.  Grimes testified that they arrived at a house, and, after Grimes gave him the signal, he pointed the gun at one of the men and took his keys and cell phone.  He testified that he shot the gun in the air when the man first refused.  He also testified that he ordered the men to walk into the woods.  According to Grimes, after the men walked into the woods, he got in his car and left defendant and Tiaqua.  Grimes testified that he had pleaded guilty to armed robbery and felony firearm.

* * *

Thomas Sandstrom testified that on October 11, 2005, a man, who had already called the previous day, came to his home in a metallic Intrepid to see a Cadillac that Sandstrom had advertised for sale.  At trial, both Thomas and his wife Maria Sandstrom identified defendant as the prospective buyer.  Defendant asked to take the car to his mechanic at King Automotive and Thomas agreed.  Thomas rode in the Cadillac with defendant, defendant's associate drove the Intrepid, and Maria followed in her Corvette.  They ended up at the last house on a dead end dirt road.  Defendant asked Thomas for the title and they went to the Corvette to retrieve it from Maria.  Thomas then felt defendant stick a gun in his side and defendant told Maria to get out of the Corvette.  Thomas was asked for his wallet, and both the Sandstroms were ordered into the woods.  Thomas heard the

8

cars drive away, so he and Maria walked back to the road and flagged down a passing police car.  Maria had memorized the license plate of the Intrepid and gave it to the police.

Grimes testified that he also helped defendant commit the Sandstrom carjacking.  He testified that he, Tiaqua, and defendant were driving around, and defendant was looking at automotive sales ads in the newspaper.  At some point, defendant called about an ad and then directed Grimes to drive to the seller's house.  After defendant spoke to a man about a car, defendant told Grimes that he was going to take the car for a test drive.  On the way, Grimes "[f]ound out that … it's about to happen again"—that defendant planned to steal the cars.  Grimes testified that just after they arrived at the house, he heard the women screaming, and he got out of his car, covered his license plate, and then drove away, leaving defendant and Tiaqua behind.  Grimes admitted that, when he was first arrested, he denied any involvement in the carjackings.

\* \* \*

Detective James Gagliardi testified that he was assigned to investigate the Brady carjacking, but his investigation hit a dead-end.  However, on October 12, 2005, he received notice of the Sandstrom carjacking and, after investigating the Intrepid lead, he was able to locate Grimes.  Grimes was arrested, and, during interrogation, he identified defendant as one of his accomplices.  Gagliardi testified that he put together a photo showup of defendant, and that Davis, Brady, and the Sandstroms all immediately identified defendant. ….  Gagliardi testified that defendant was taken into custody on Friday, October 14, 2005.

In late January and early February 2006, the trial court held the Brady trial.  The trial lasted six days and included all the charges stemming from both the Brady and the Sandstrom carjackings.  The jury convicted defendant as

9

charged of four counts of carjacking, four counts of armed robbery, two counts of felony firearm, and one count of being a felon in possession of a firearm.

(R. 8-44, Michigan Court of Appeals Op., Page ID # 3235-3236).[1]

## II.    Procedural History

A Genesee County jury in this case convicted Pouncy of four counts of carjacking (Mich. Comp. Laws § 750.529a), four counts of armed robbery (§ 750.529), two counts of possession a firearm during the commission of a felony (felony-firearm) (§ 750.227b), and one count of being a felon in possession of a firearm (felon-in-possession) (§ 750.224f).  The state trial court sentenced him as a third-offense

---

[1] There were actually three separate carjackings all within a short period time that resulted in charges being brought against Pouncy.  One involving victim Earl Brady, the carjacking involving victims Thomas and Maria Sandstrom, and a third carjacking referred to as the "Haynes carjacking."  As noted above, the charges arising out of the Brady and Sandstrom carjackings were tried together.  The Haynes carjacking was later tried separately, following which Pouncy was convicted of one count of armed robbery, carjacking, being a felon in possession of a firearm, carrying a concealed weapon, and felony firearm.  However, the convictions arising from the Haynes carjacking were later reversed by the Michigan Court of Appeals due to its finding that Pouncy had experienced a total deprivation of counsel during a critical stage of the proceedings. (R. 8-44, Michigan Court of Appeals Op., Page ID # 3265, 3268).  The Genesee County Prosecutor chose not to retry that case and thus the reversed convictions arising from the Haynes carjacking are not discussed further in this brief.

habitual offender (§ 769.11) to concurrent sentences of 562 months to

800 months for the carjacking and armed robbery convictions and 2 to

10 years for the felon in possession conviction, served consecutive to 2

years in prison for the felony-firearm convictions (which are concurrent

with each other).

Following his conviction and sentence, Pouncy filed a claim of

appeal in the Michigan Court of Appeals, which raised over 20 claims

between the initial brief, the supplemental brief, and the pro se

standard 4 brief.

The Michigan Court of Appeals affirmed Pouncy's convictions

arising out of the Brady and Sandstrom carjackings in an unpublished

opinion.  (R. 8-44, Michigan Court of Appeals Op., Page ID # 3233-

3234).

Pouncy subsequently filed an application for leave to appeal in the

Michigan Supreme Court that raised approximately 13 claims.  (R. 8-47,

Application for Leave to App., Page ID # 4147-4204).

The Michigan Supreme Court denied the application because it

was not persuaded that the questions presented should be reviewed by

the Court.  (R. 8-47, Ord., Page ID # 4065).

Pouncy returned to the state trial court and filed a motion for relief from judgment, which contained numerous claims, including the claim upon which the District Court most recently granted habeas relief to Pouncy – the claim that he was denied his right to the effective assistance of counsel during the plea negotiation stage of his case. (R. 8-20, Motion for Relief from Judgment, Page ID # 2019-2073).

The trial court denied the motion for relief from judgment. (R. 8-37, Ord., Page ID # 3137-3164). It denied some of the claims on their merits, and denied others citing Mich. Ct. R. 6.508(D)(2) or Mich. Ct. R. 6.508(D)(3), and/or the lack of merit of the claims[2] After the trial court denied the motion for relief from judgment, Pouncy filed an application for leave to appeal in the Michigan Court of Appeals, raising some, but not all, of the claims he originally asserted in his motion for relief from judgment. (R. 8-48, Application for Leave to App., Page ID # 4228-4273).

The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan

---

[2] How the state trial court addressed the claim at issue in this case is discussed in detail, *infra.*

Court Rule 6.508(D). (R. 8-48, Mich. Ct. App. Order, Page ID # 4227.)

Pouncy applied for leave to appeal in the Michigan Supreme Court (R.

8-49, Application for Leave to Appeal, Page ID # 4441-4511) but was

also denied relief under Michigan Court Rule 6.508(D). (R. 8-49, Ord.,

Page ID # 4440).

Pouncy then filed a petition for habeas relief, asserting claims that

had been resolved on direct appeal as well as claims that were

presented in his collateral motion for relief from judgment. The District

Court granted Pouncy a conditional writ of habeas corpus on his claim

that Pouncy's waiver of his right to counsel clearly failed to comply with

*Faretta v. California,* 422 U.S. 806, 807 (1975) and that the Michigan

Court of Appeals' contrary holding was an unreasonable application of

*Faretta.* (R. 76, Op. & Ord., Page ID # 6848-6849).

The Warden appealed this decision to this Court. A divided panel

of this Court reversed the judgment of the District Court and remanded

the case to the District Court "for further proceedings not inconsistent

with this opinion." *See Pouncy*, 846 F.3d at 163.

On remand, the District Court again granted habeas relief to

Pouncy, this time on his claim that he was denied his right to the

effective assistance of trial counsel during plea negotiations but denied

him habeas relief on the remaining claims.  The District Court

summarized its ruling and laid out its ordered remedy as follows:

1. The Court **GRANTS** a conditional writ of habeas corpus
   on Pouncy's claim that he was denied the effective
   assistance of counsel in connection with the plea-
   bargaining process.  The Court orders the State of
   Michigan (acting through either the Michigan Attorney
   General's Office or the Genesee County Prosecutor's
   Office) to offer Pouncy, within 60 days, a plea deal that (1)
   permits Pouncy to plead no contest to all of the charges
   against him without the habitual offender enhancement
   and (2) includes a *Killebrew* sentencing agreement calling
   for a minimum sentence of 135-225 months (to be served
   consecutively to the two-year sentence for the felony
   firearm convictions).  If Pouncy accepts that offer in
   writing within 30 days, then within 60 days of Pouncy's
   written acceptance, the State shall petition the state trial
   court (1) to re-open the state criminal case against
   Pouncy, (2) to vacate Pouncy's convictions, and (3) to
   accept the parties' plea agreement and to impose a
   sentence consistent with that agreement.  The State shall
   release Pouncy from custody unless, as directed above, (1)
   it timely satisfies its obligations to offer Pouncy the plea
   deal in writing and (2) if Pouncy timely accepts that plea
   deal in writing, it petitions the state trial court as
   directed above.

2. In all other respects Pouncy's petition for a writ of habeas
   corpus is **DENIED**. (R. 401, Op. & Ord., Page ID # 14488-
   14489.)

The Warden again appeals to this Court.

14

## SUMMARY OF ARGUMENT

There are two independent grounds upon which this Court should reverse the District Court's decision granting Pouncy habeas relief on his *Strickland/Lafler* claim.

First, AEDPA applies to the state trial court's decision denying Pouncy relief on his *Strickland/Lafler* claim.[3] And under AEDPA deference, Pouncy loses because the state court's adjudication of the claim was not objectively unreasonable. As such, the District Court erred in conducting de novo review of that claim, which included holding a federal evidentiary hearing on the claim and considering evidence elicited from that hearing in determining the validity of Pouncy's *Strickland/Lafler* claim. The District Court and the parties erred below in assuming that AEDPA did not apply, but the case law is clear that federal courts are bound to afford AEDPA deference where the state court, as here, adjudicated the claim on the merits. That is true even where the State fails to press the point below.

_____

[3] As the claim is comprised of elements of these two Supreme Court decisions – *Strickland v. Washington*, 466 U.S. 668 (1984), and *Lafler v. Cooper*, 566 U.S. 156 (2012), this is how the Warden is going to characterize the claim moving forward.

Second, even if this Court ultimately determines that the state courts did not address the *Strickland/Lafler* claim on its merits, and consequently that de novo review of the claim by the District Court was appropriate, the District Court erred in granting Pouncy habeas relief on the *Strickland/Lafler* claim, especially as it concerns the findings of fact it made to support its conditional grant of habeas relief.

## STANDARD OF REVIEW

AEDPA prevents a federal court from granting habeas corpus relief based on any claim "adjudicated on the merits" in state court, unless the petitioner can establish that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See Metrish v. Lancaster*, 569 U.S. 351 (2013).

# ARGUMENT

I. **Because AEDPA applies to the state trial court's decision denying Pouncy relief on his *Strickland/Lafler* claim, the District Court erred in conducting de novo review and holding a federal evidentiary hearing on the claim. The state court adjudication rejecting the claim on the merits was not objectively unreasonable.**

The District Court made a serious mistake. And so did the parties. The state trial court adjudicated Pouncy's *Strickland/Lafler* claim on its merits and thus the claim should have been reviewed by the District Court using AEDPA's deferential standards. Moreover, because the state trial court ultimately adjudicated Pouncy's *Strickland/Lafler* claim on its merits, there should not have been an evidentiary hearing on the claim and none of the evidence elicited during that hearing should have been used to determine whether the state trial court unreasonably rejected Pouncy's *Strickland/Lafler* claim. Once this point is recognized and AEDPA deference accorded to the state court decision, this Court should reverse because the state court adjudication was not objectively unreasonable.

**A.    The District Court erred in reviewing the issue de novo, and this failure to apply the correct standard of review cannot be waived.**

Any discussion of the applicable standard of review should begin with an examination of the last state court to issue a reasoned decision on the claim.  Here, that is the state trial court which made the following ruling in response to Pouncy's *Strickland/Lafler* claim:

> Again, Defendant argues ineffective assistance of trial counsel.  Whether regarding Mr. Breczinski as standby counsel or Defendant Pouncy in his capacity as his own attorney, based on the foregoing analysis and the Court of Appeals prior ruling, Defendant's arguments are without merit pursuant to MCR 6.508(D).  (R. 8-37, 11-3-10 Op. & Ord., Page ID # 3159-3160.)

At first blush, this language appears to indicate a reliance on Mich. Ct. R. 6.508(D)(2),[4] which "is a collateral estoppel rule which prohibits a trial court from reconsidering a claim already decided against a defendant on direct appeal."  *See Skinner v. McLemore*, 425 F. App'x 491, 495 (6th Cir. 2011).  However, upon careful examination of the language used by the state trial court, its true meaning reveals

---

[4] Mich. Ct. R. 6.508(D)(2) states that a court may not grant relief to a defendant who files a motion for relief from judgment that "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter" except under two very limited circumstances not relevant to this case.

19

itself.  That is because, despite appearing to (erroneously) invoke Mich. Ct. R. 6.508(D)(2), the state trial court then proceeds to reject the *Strickland/Lafler* claim on its merits by stating that the claim is "without merit."  And the erroneous invocation of Mich. Ct. R. 6.508(D)(2) does not invalidate the portion of the language that adjudicated the claim on its merits.  *See Parker v. Matthews*, 567 U.S. 37, 42 (2012) ("[I]t is irrelevant that the court also invoked a ground of questionable validity").

Moreover, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  The Supreme Court even more forcefully expressed the strength of this presumption when it subsequently stated that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court *must presume* that the federal claim was adjudicated on the merits ...." *Johnson v. Williams*, 568 U.S. 289, 301 (2013).  However, this "presumption may be overcome when there is reason to think some

other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99−100.  The Supreme Court has cautioned that the circumstances in which the presumption can be overcome are "limited." *Williams*, 568 U.S. at 301.

The presumption has not been overcome here.  Of course, there is some question as to whether the state trial court actually adjudicated the *Strickland/Lafler* claim on the merits.  The contrary positions that the Warden has taken on this point is a clear indication that some question does indeed exist.  But that is not enough to overcome the *Richter* presumption.  Rather, the presumption can only be overcome "when there is reason to think some other explanation for the state court's decision *is more likely*." *Richter*, 562 U.S. at 99−100 (emphasis added).  And there is no reason here to think that some other explanation – that the state court did not address the claim on its merits – *is more likely* than that it did adjudicate the claim on its merits.

Finding that the *Richter* presumption was not overcome here would be consistent with what this Court did during the appeal of the first grant of conditional habeas relief in this case in addressing

21

language used by the state trial court in denying the claim at issue in

that appeal.  This Court keenly noted this consistency when it denied

reconsideration of this Court's denial on July 15, 2022, of Pouncy's

motion for release pending appeal during earlier proceedings in this

appeal.  This Court said:

> Our analysis of Pouncy's prior habeas appeal lends credence to this conclusion.  In *Pouncy v. Palmer*, 846 F.3d 144, 163 (6th Cir. 2017), we reversed the district court's grant of habeas relief on Pouncy's claim that he did not knowingly, intelligently, and voluntarily waive his right to counsel ….  Pouncy raised this claim and his *Lafler* claim in the same post-conviction motion and the state trial court rejected them in the same order.  *We concluded that AEDPA deference applied to the waiver-of-counsel claim even where the state trial court expressly invoked Michigan Court Rule 6.508(D)(2) in its analysis of that claim before concluding that the argument was "without merit."  Pouncy, 846 F.3d at 159−160.  **This is strong evidence that AEDPA deference also applies to Pouncy's Lafler claim, considering that the state trial court did not expressly cite to the procedural provisions of Rule 6.508(D) when it denied that claim.***

*Pouncy v. Palmer*, Sixth Circuit Case 21-2759, Document 38-2,

Page 4 (emphasis added).  In the end, there is every reason to

believe that the state trial court adjudicated Pouncy's

*Strickland/Lafler* claim on its merits.  At a minimum, another

22

explanation is not more likely.  As such, AEDPA deference applies

to the state court's rejection of that claim.

Pouncy is likely to argue that the Warden waived the application

of AEDPA to the *Strickland/Lafler* claim by conceding in some of its

pleadings and on the record during proceedings in the District Court

that AEDPA deference was not owed to the state trial court's decision

on the claim.  Indeed, the Warden did at various points during the

lengthy litigation in this case indicate that AEDPA deference did not

apply to the resolution of this habeas claim. (*See e.g.,* R. 239,

Supplemental Merits Brf., Page ID # 11374; R. 321, Respondent's Brf.

in Response to Petitioner Omar Pouncy's Opening Brf. in Support of his

Remaining Unresolved Habeas Claims, Page ID # 12583; and R. 372,

Video Hr'g on Petition, Page ID #13788).[5]

---

[5] But the Warden did not always take the position that AEDPA
deference was not owed to the state trial court's decision on the
*Strickland/Lafler* claim.  In one of its earliest pleadings to specifically
address the standard of review applicable to this claim, the Warden
argued that the state courts ruled on the merits of the
*Strickland/Lafler* claim, thereby requiring AEDPA deference.  (R. 170,
Ans. to Petitioner's History of Remaining Habeas Claims, Page ID #
8494-8495.)

But these statements no more bind this Court (or the District Court for that matter) than do Pouncy's arguments that AEDPA deference does not apply to resolution of the *Strickland/Lafler* claim.[6] That is because the appropriate standard of review *cannot* be waived, conceded, or abandoned by the parties and a habeas court has an *independent* obligation to determine the appropriate standard of review. *See Brown v. Romanowski*, 845 F.3d 703, 711 n. 4 (6th Cir. 2017) (citing *Moritz v. Lafler*, 525 F. App'x 277, 285 n.5 (6th Cir. 2013)).  *See also Ward v. Stephens*, 777 F.3d 250, 257 n. 5 (5th Cir. 2015) ("A party cannot waive, concede or abandon the applicable standard or review"); *Amado v. Gonzalez*, 758 F.3d 1119, 1133 n.9 (9th Cir. 2014) (holding that the AEDPA standard of review cannot be waived, even if the correct AEDPA standards were not addressed by the parties in their briefs, reasoning that the habeas court has "the obligation to apply the correct standard, for the issue is non-waivable.")  In other words, no matter what the Warden (or Pouncy for that matter) stated during the course of the very lengthy litigation in this matter, the District Court

---

[6] *See* R. 300, Petitioner Omar Pouncy's Opening Brf. in Support of his Remaining Unresolved Habeas Claims, Page ID # 12307.

was obligated to *independently* determine the correct standard of review and apply it to the *Strickland/Lafler* claim.

Here, the District Court briefly addressed the standard of review as follows:

> Pouncy presented his claim that he received ineffective assistance of counsel in connection with the plea-bargaining process to the state courts, and the state courts did not decide the claim on its merits. Thus, as Respondent acknowledges, this Court may review the claim *de novo*. (*See* Respondent Br., ECF No. 321, PageID.12583.) (R. 401, Op. & Ord., Page ID # 14402.)

But, as demonstrated above, the District Court was wrong to find that AEDPA review was not owed to the state trial court's decision on Pouncy's *Strickland/Lafler* claim. And so were the parties. And to the extent that the District Court relied on some of the Warden's statements concerning the applicability of AEDPA, it was wrong to do so.

### B. The District Court erred in conducting an evidentiary hearing on the *Strickland/Lafler* issue and should not have considered evidence presented at that hearing.

The implications for this matter of AEDPA deference applying to a merits adjudication of the *Strickland/Lafler* claim by the state trial court cannot be understated. In fact, it is a game changer.

25

First, as noted, because the claim was adjudicated by the state trial court on its merits, the District Court incorrectly reviewed the claim de novo. That means it gave no deference to a decision that was in fact an adjudication on the merits.

Second, the District Court was wrong to conduct an evidentiary hearing on the *Strickland/Lafler* claim. It is well-established both in the Supreme Court and in this Circuit that a habeas court is "precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013) (citing *Cullen v. Pinholster*, 563 U.S. 170, 184–185 (2011)). *See also Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012) (finding petitioner was not entitled to an evidentiary hearing because the state courts had adjudicated his claim on the merits and, under *Pinholster*, petitioner was "stuck with the record that was before the state court") (cleaned up).

Third, and relatedly, the District Court should not have considered *any* of the evidence adduced at the federal evidentiary hearing, whether favorable to Pouncy or to the Warden, in determining

whether to grant habeas relief to Pouncy on his *Strickland/Lafler* claim. *See Pinholster*, 563 U.S. at 185 ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review."); *Loza v. Mitchell*, 766 F.3d 466, 494 (6th Cir. 2014) ("Loza's selective prosecution claim was adjudicated on the merits in state court, and, therefore, *Pinholster* requires us to consider only the evidence that was before the state court when reviewing Loza's claim."); *Moore v. Mitchell*, 708 F.3d 760, 780–84 (6th Cir. 2013) (holding that a federal habeas court may not consider additional evidence not presented to state courts even where parties jointly moved to expand the record to include that evidence before *Pinholster* was decided); *Sheppard v. Bagley*, 657 F.3d 338, 344 (6th Cir. 2011) (refusing to consider evidence adduced at federal evidentiary hearing in light of *Pinholster*).

Again, this is a game changer. That is because, under proper application of AEDPA deference to the state trial court' decision on Pouncy's *Strickland/Lafler* claim (as discussed *infra*), Pouncy cannot demonstrate that the decision was an objectively unreasonable application of Supreme Court precedent.

### C.  Under AEDPA review, Pouncy has not shown that the state trial court's rejection of his *Strickland/Lafler* claim was objectively unreasonable.

Applying AEDPA deference, Pouncy cannot demonstrate that the state trial court's rejection of his *Strickland / Lafler* claim was contrary to – or an unreasonable application of – clearly established federal law as determined by the Supreme Court.  Thus, the District Court's decision granting habeas relief on this claim should be reversed.  Pouncy is not entitled to habeas relief on his *Strickland / Lafler* claim under AEDPA.

One initial point.  Obviously, at the time that the state trial court rejected the claim, *Lafler* had not yet been decided, which would normally bar relief under AEDPA for a claim that relies on *Lafler*.  This is because for AEDPA purposes, the Supreme Court decision at issue must have been on the books at "the time the state court render[ed] its decision."  *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Pinholster*, 563 U.S. at 182 ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).  But this Court has held that *Lafler* did *not*

28

create a new rule of constitutional law. *See In re Liddell*, 722 F.3d 737, 738−739 (2013), and cases cited therein. As such, the Warden is not arguing that *Lafler* does not apply in this case in an AEDPA analysis.

      **1.**    **The *Strickland/Lafler* framework requires proof of deficient performance and prejudice in the plea setting.**

A claim of ineffective assistance of counsel is governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105.

In order to establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that he was prejudiced by counsel's action or inaction. *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Strickland,* 466 U.S. at 687–88).

Regarding the first *Strickland* prong, deficient performance, review of counsel's performance is "highly deferential." *Strickland*, 46 U.S. at 689. "Because of the difficulties inherent in making the

evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110.

Further, the reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Pinholster*, 563 U.S. at 196. "Reliance on the harsh light of hindsight to cast doubt on a trial that took place . . . years ago is precisely what *Strickland* and AEDPA seek to prevent." *Richter*, 562 U.S. at 107 (quotations and citations omitted).

Second, a petitioner must prove that counsel's deficient performance prejudiced the defense. To prove prejudice where the claim is that counsel's performance caused him to reject a plea offer and instead proceed to trial, the petitioner must show that but for the bad advice there is a reasonable probability that:

> 1. That the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances),

2. That the court would have accepted its terms, and

3. That the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. at 164.  A "reasonable probability," the Court has held, "is a probability sufficient to undermine confidence in the outcome," which "requires a substantial . . . likelihood of a different result," "not just [a] conceivable" one.  *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694).

Additionally, when AEDPA applies, review is even further limited because this Court must give deference to both trial counsel and the state court reviewing their performance.  The Supreme Court has stressed that the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).  Thus, a state prisoner seeking a federal writ of habeas corpus on the ground that he was denied effective assistance of counsel "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002); *Durr v. Mitchell*, 487 F.3d 423, 435 (6th Cir. 2007).  On habeas review, the question "is not whether a federal court believes the state

31

court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)) (internal quotation marks omitted). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 123.

> **2.    Applying AEDPA deference, the state trial court's decision rejecting Pouncy's *Strickland/Lafler* claim was not objectively unreasonable as his counsel was not deficient.**

The District Court found that Pouncy's trial attorney – Michael Breczinski  – performed deficiently.  In so finding, the District Court focused almost entirely on the state sentencing guidelines.  But when properly analyzed under AEDPA, as it must, such a focus cannot stand.

Generally, an inaccurate guideline-range prediction by trial counsel will not meet the requirement of deficient performance under *Strickland*.  *See Thomas v. United States*, 27 F.3d 321, 325–26 (8th Cir. 1994), and cases cited therein.  Moreover, during the prior appeal in

this case, this Court said in assessing Breczinski's overall level of preparedness, "we note that it is sometimes difficult to estimate the applicable guidelines range before trial given that many potentially relevant facts have not been proven." *Pouncy v. Palmer*, 846 F.3d at 163.

In an attempt to distinguish Pouncy's case from *Thomas* as well as this Court's prior comments about the difficulty in correctly estimating the sentencing guidelines in a pre-trial context, the District Court found that it was not necessarily counsel's failure to properly estimate the guidelines that serves as the basis for its finding that counsel performed deficiently, but rather that Breczinski never told Pouncy that the scoring of the guidelines discussed just before trial began was just an estimate or a prediction and could change prior to sentencing. (R. 401, Op. & Ord., Page ID # 14413, n. 14).

But here's where review under the double-deference of *Strickland* and AEDPA really matters. There is no evidence in the state court record of this case that indicates that anyone – most importantly

33

Breczinski – actually said that there was no chance that the guidelines range would change before his sentencing.[7]

In other words, while the record does not specifically reveal whether Pouncy was advised that the guidelines discussed prior to trial might change before sentencing, it also does not reveal that Pouncy was told by Breczinski that these in fact *would be* the final guidelines used at sentencing. The double-deference of *Strickland* and AEDPA require that federal habeas courts "afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 575 U.S. 312, 317 (2016) (cleaned up). Giving defense counsel "the benefit of the doubt" precludes assuming, without record support, that he failed to properly advise his client in this respect.

---

[7] Breczinski's affidavit, dated November 10, 2015, was not part of the record before the state trial court when it ruled on Pouncy's *Strickland/Lafler* claim in 2010. Nonetheless, even if it had been, Breczinski only said in his affidavit, citing to particular pages of the trial transcript, that he "impressed upon" Pouncy that he would only face a sentencing guidelines range of 135 months to 337 months if he rejected the plea offer and proceeded to trial and was convicted. (R. 71, Affidavit, Page ID # 6650–51). But a review of the cited pages of the trial transcript does not indicate anything said by Breczinski which would have "impressed upon" Pouncy that there was *no* possibility that the sentencing guidelines might change upon conviction.

Further, in its discussion of deficient performance, the District Court cited three decisions from the federal courts of appeal: *Moss v. United States*, 323 F.3d 445 (6th Cir. 2003); *United States v. Knight*, 981 F.3d 1095 (D.C. Cir. 2020), and *Julian v. Bartley*, 495 F.3d 487 (7th Cir. 2007). (R. 401, Op. & Ord., Page ID # 14410−14411). But these decisions do not constitute "clearly established federal law" for purposes of AEDPA.[8] As the Supreme Court has repeatedly pointed out, for AEDPA purposes, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' " *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017) (per curiam) (quoting *Glebe v. Frost*, 574 U.S. 21, 23 (2014)) (per curiam). Moreover, federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 63 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 574 U.S. 1, 6 (2014) (providing that absent a decision by the Supreme Court

---

[8] Even if AEDPA did not apply, and the District Court could properly consider these case authorities, they do not assist Pouncy for the reasons discussed, *infra*.

addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim).

> **3.    Applying AEDPA deference, the state trial court's decision rejecting Pouncy's *Strickland/Lafler* claim was not objectively unreasonable as there was no prejudice.**

As noted, there was no deficient performance here.  But, even if applying AEDPA deference, this Court were to find that Breczinski performed deficiently, it must still find under AEDPA that prejudice occurred.  Such a finding is not tenable.

Demonstrating prejudice under *Strickland/Lafler* in the context of this case comes down to one overarching question: *if counsel had correctly advised the defendant*, would things have been different.  In other words, the most significant question is whether Pouncy would have taken the plea offer if advised correctly by Breczinski.  The clear answer, based on the record that was before the state trial court at the time it rendered its decision on the *Strickland/Lafler* claim, is "no."

Here, it is critical that Pouncy be able to point to *something* that was in the record at the time that the state trial court rejected his *Strickland/Lafler* claim to show that he would have accepted a plea

offer.[9]  But he cannot.  This is because Pouncy made a statement just before trial that is *completely* irreconcilable with accepting a plea offer:

**"I will never take the plea to nothin' I did 'cause I didn't do it."**

(R. 8-7, 1/24/06 Tr., Page ID # 478, emphasis added.)  Thus, the state court record indicates unequivocally that Pouncy did not reject the plea offer because it was not favorable enough, or because he was misadvised, *he rejected it because he claimed he was innocent and, as such, would never accept a plea offer of any kind.*

The District Court, citing this Court's opinion in *Byrd v. Skipper*, 940 F.3d 248 (6th Cir. 2019), found that Pouncy's statement on the record on the morning of trial that he would not take a plea was "in

---

[9] Recall that, if AEDPA applies, nothing elicited at the federal evidentiary hearing (whether favorable to Pouncy or favorable to the Warden) can be used to answer the question of whether Pouncy would have accepted the plea offer being presented.  As virtually all of the District Court's findings of fact in its opinion and order relating to the prejudice prong of *Strickland/Lafler* were based on evidence and exhibits submitted during the federal evidentiary hearing (*see* R. 401, Op. & Ord., Page ID # 14415–14422), they cannot be used to determine if the state trial court's rejection of the *Strickland/Lafler* claim was objectively unreasonable.  The District Court itself stressed the importance of this evidence to its analysis saying that "[t]he testimony and other evidence presented at the evidentiary hearing provided important additional information bearing on the question of prejudice that was not apparent from the trial record alone."  (R. 401, Op. & Ord., Page ID # 14414.)

large measure" rooted in misinformation gleaned from his attorney's "faulty advice" about his potential sentencing exposure.  (R. 410, Op. & Ord., Page ID # 14425).[10]  But again, defense counsel must be given the "the benefit of the doubt" and this precludes assuming, without record support, that he failed to properly advise his client in this respect.

The District Court also cited several cases from this circuit holding that a prisoner's protestations of innocence do not necessarily preclude a finding by a federal court that the prisoner would have taken a plea.  (R. 401, Op. & Ord., Page ID # 14422, 14424).  But there is nothing in these cases – *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003),  *United States v. Griffin*, 330 F.3d 733 (6th Cir. 2003), and *Sawaf v. United States*, 570 F.App'x 544 (6th Cir. 2014) – indicating that the prisoners did anything more than claim their innocence.

Contrast that with this case where Pouncy's pre-trial statements were not just protestations of his innocence.  He clearly and unambiguously stated in open court on-the-record on the day of trial that, because he did not commit the charged crimes, he would *never*

---

[10] The Warden addresses *Byrd* more fully in the next section of this brief, *infra*.

*take a plea.*  That is far more than the mere protestations of innocence present in *Smith, Griffin* and *Sawaf.*

In any event, protestations of innocence can – in the proper context – render it implausible that a prisoner would have tendered a plea.  *See Robinson v. United States*, No. 17-341, 2020 WL 5805513, at *7 (E.D. Tenn. 2020).  This case presents just such context.

One final point which goes to the remedy imposed by the District Court.  The plea offer *did not include an agreement on a specific sentencing guidelines range*.  This was *the prosecution's* plea offer: "Judge the offer is plea to those eleven counts and no HO for sentencing."  (R. 8-7, 1/24/06 Tr., Page ID # 476.)  The prosecution did not include in the offer an agreement on a sentencing guidelines range or a specific sentence or any agreement to allow Pouncy to plead no-contest.  Nonetheless, Pouncy's defense counsel estimated Pouncy's sentencing guidelines range based on the information *available to him at the time*.  He did so in conjunction with the prosecutor.  Together, they estimated that Pouncy's guidelines range would be 135 to 225 months *without the habitual offender enhancement*.  But counsel's estimate was just that: an estimate.  It was *not* a term of the plea offer.

The District Court made a finding of fact in its opinion and order granting conditional habeas relief that, if Breczinski had performed effectively during plea negotiations, the prosecution would have agreed to modify its original offer to include a sentence agreement calling for a minimum sentence of between 135-225 months (consecutive to the mandatory two-year sentence for the felony-firearm convictions) and would have allowed Pouncy to plead no-contest.  (R. 401, Op. & Ord., Page ID # 14420−14421.)  But that finding of fact was entirely based on the District Court's interpretation of evidence presented during the federal evidentiary hearing, which under AEDPA cannot be considered. So, the District Court's remedy for the alleged *Strickland/Lafler* violation falls apart under AEPDA review just as does the District Court's reasoning for finding that counsel was deficient – and Pouncy prejudiced – under *Strickland/Lafler*.

In the end, when the state trial court's rejection of Pouncy's *Strickland/Lafler* claim is reviewed using AEDPA deference, Pouncy has not demonstrated that the state trial court's decision is an unreasonable application of clearly established federal law as determined by the Supreme Court under 28 U.S.C. § 2254(d)(1).

Moreover, Pouncy has not demonstrated that the state trial court's decision resulted from an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2), when he so emphatically stated on the record on the day of trial that he would never take a plea to anything because he was innocent.

This Court should reverse the decision of the District Court on the basis of AEDPA alone.

## II.    Even if de novo review – rather than AEDPA review – applies to Pouncy's *Strickland/Lafler* claim, the District Court erred in granting Pouncy habeas relief on that claim

Even if AEDPA deference did not apply in this case, the District Court erred in granting Pouncy habeas relief on his *Strickland/Lafler* claim following de novo review, and including the testimony and evidence elicited during the federal evidentiary hearing.

Habeas relief is an "extraordinary" remedy, *Bousley v. U.S.*, 523 U.S. 614, 621 (1998), and one not warranted in this case.  It should be reserved for "extreme malfunctions" in the state criminal justice systems.  *Richter*, 562 U.S. at 102.

Moreover, in an appeal from a decision granting or denying habeas relief, this Court will review the District Court's legal

41

conclusions de novo and its findings of fact for clear error. *See McElrath v. Simpson*, 595 F.3d 624, 630 (6th Cir. 2010); *Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012). Under clear-error review, an appellate court can affirm a district court's finding of fact so long as the finding is "plausible in light of the record viewed in its entirety[.]" *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

De novo review does not – nor should it – automatically result in a grant of habeas relief. The District Court is still required to exercise its "independent judgment" to determine whether Pouncy's federal claim establishes constitutional error and thus requires habeas relief. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

Contrary to the District Court's factual and legal findings, Pouncy did not meet his burden under *Strickland/Lafler*, even under de novo review. The District Court should not have granted Pouncy conditional habeas relief on his *Strickland/Lafler* claim.

**A.   The trial court's de novo findings and legal conclusions concerning deficient performance are clearly erroneous.**

As discussed, *supra*, the District Court's analysis concerning the deficient performance prong of *Strickland / Lafler* is based on counsel's failure to provide "professional guidance" to Pouncy "regarding his sentence exposure" in general and specifically his failure in not "advising Pouncy that the pre-trial guidelines calculations stated by himself and the trial court were *estimates* that (1) were based upon certain *assumptions* and (2) could change substantially based upon the evidence presented at trial, the guidelines offered by the probation department, and post-trial findings made by the trial court."  (R. 401, Op. & Ord., Page ID # 14410-14411.)  These findings were unwarranted.

**1.   *Strickland* standing alone is a very deferential standard.**

Much has already been said about the District Court's ruling on trial counsel's performance during the pre-trial plea-negotiating phase in the section of this brief addressing the claim under AEDPA deference.  Most of what is said there applies equally when analyzing deficient performance de novo under *Strickland* because *Strickland*

standing alone (e.g., without the second layer of deference provided by AEDPA) is very deferential to counsel. *Richter*, 562 U.S. at 105 ("Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.")  And there was nothing revealed at the federal evidentiary hearing which credibly supported the proposition that Breczinski had never told Pouncy that his estimation of what the sentencing guidelines would be in his case were set in stone and that they could not change after trial, or even after a pre-sentencing investigation following a plea by Pouncy.

> **2.    The District Court erroneously relied on distinguishable circuit precedent in attempting to establish deficient performance.**

Some additional points need to be made however, since the absence of AEDPA allows for the District Court to rely on circuit precedent to assist it in resolving the question of counsel's performance. But the circuit precedent relied upon by the District Court does not assist either the District Court or Pouncy.

The only Sixth Circuit case cited by the District Court in its discussion of deficient performance is *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003).  The District Court states that *Moss* stands for

the proposition that an attorney's failure to provide competent "professional guidance to [Pouncy] regarding his sentence exposure" can fall below an objective standard of reasonableness so as to justify a finding of deficient performance.  (R. 401, Op. & Ord., Page ID # 14410).  The District Court correctly quoted *Moss*, but that case does not justify a finding of deficient performance in this case.

In *Moss*, similar to the facts of this case, the defendant claimed his attorney eliminated the possibility that he would contemplate a plea offer through "counsel's grossly inaccurate, unresearched, and ignorant advice regarding Moss's sentencing exposure" and that—with proper advice—he would have had wanted his attorney to pursue plea options. *Moss*, 323 F.3d at 475.  This Court *rejected* the claim, noting in particular that Moss's attorney had provided him with "competent advice regarding the sentencing guidelines."  *Id.*  It also said that, on appeal, "Moss fails to produce any specific and credible evidence indicating that [trial counsel] rendered by not exploring plea negotiations with [the AUSA].  [Trial counsel] repeatedly testified that he initially considered engaging in plea negotiations with [the AUSA] but abandoned the strategy after Moss displayed a resolute

45

unwillingness to enter into a plea agreement with the government." *Id.* Further, trial counsel testified that Moss declared his innocence and "wasn't going to plead no matter what" and, as such that "there was no point in discussing a plea agreement with the government." *Id.*

*Moss* actually favors the Warden given its similarities to the facts and posture of this case. First, like in *Moss*, Breczinski's initial calculation of the sentencing guidelines was likely "competent" a point not lost on the District Court here.[11] The District Court thus erred in relying on *Moss* for its finding of deficient performance in this case. Second, like Moss, Pouncy stated in the presence of Breczinski and others on the record that he was not going to plead to anything because he was innocent. And third, like Moss, Pouncy has failed to present any *credible* evidence that would demonstrate that Breczinski should have done more after Pouncy so forcefully rejected the prosecution's plea offer

---

[11] The District Court stated that "Respondent has now offered a detailed analysis as to why the guidelines range stated by defense counsel was not an unreasonable pre-trial estimate of Pouncy's exposure under the guidelines even though it ended up falling far short of the range that the trial court ultimately calculated…. Respondent's analysis of this issue is serious and may have some merit." (R. 401, Op. & Ord., Page ID # 14413, n. 14)

or that *any* plea offer would not have been similarly rejected, a point explored more *infra*.

The District Court also relies on two case authorities from other circuits—*United States v. Knight*, 981 F.3d 1095, 1102 (D.C. Cir. 2020), and *Julian v. Bartley*, 495 F.3d 487, (7th Cir. 2007). *Knight* is not helpful because in that case the court cites to the Government's *concession* that counsel had performed deficiently and thus there is no real discussion of the *Strickland*'s deficient performance prong. Nor is *Julian* helpful because clearly counsel performed deficiently by grossly misinterpreting the Supreme Court's then-recent decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). There is no such "gross misinterpretation" of any case law here by Breczinski.

In sum, even giving the District Court the benefit of de novo review of Pouncy's *Strickland/Lafler* claim, its finding of deficient performance does not hold water. This Court should find on its own review that the District Court's analysis is unsupported and erroneous.

47

**B.    The District Court's de novo findings and legal conclusions concerning prejudice are clearly erroneous.**

However, the most significant errors made by the District Court in granting Pouncy conditional habeas relief on his *Strickland/Lafler* claim occurred during its discussion of the prejudice prong.  There were three distinct errors.

*First*, in finding *Strickland/Lafler* prejudice, the District Court did not give the appropriate weight to evidence of Pouncy's intent and state of mind from the state court record and exhibits introduced at the federal evidentiary hearing.

*Second*, and perhaps more importantly, the District Court found Pouncy's testimony at the evidentiary hearing that he would have accepted a plea offer in the first instance to be credible.  This finding is clearly erroneous as evidenced by the existing state court record and Pouncy's proven record of dishonesty and bad behavior in this habeas action, evidence concerning which the Assistant Attorney General tried to elicit during the federal evidentiary hearing.  Namely, Pouncy bribed a witness to falsely admit that the witness committed this crime, and

when the Assistant Attorney General began to ask him about that at the hearing, he invoked his Fifth Amendment privilege.

*Third*, the District Court's assessment and findings concerning the two other witnesses who testified at the evidentiary hearing – Leonard Accardo and Christopher Larobardiere – likewise deserve the application of the phrase "clearly erroneous."

### 1. Pouncy's completely incredible testimony at the federal evidentiary hearing does not establish the requisite prejudice.

But first Pouncy's testimony. The District Court found Pouncy's federal evidentiary hearing testimony on whether he would have accepted a plea offer prior to trial to be credible. In fact, it based many of its findings – both legal and factual – on this purportedly credible testimony.

The District Court clearly erred in finding Pouncy's testimony credible not just because it was self-serving and inherently incredible, but also because Pouncy has previously engaged in behavior designed to mislead and provide false testimony to the District Court, behavior that

the District Court failed to give enough weight to when finding Pouncy's

relevant testimony credible.[12]

Specifically, during the course of the proceedings on remand from

this Court, the Warden provided damning evidence that Pouncy – while

in prison for the offenses underlying this habeas action – paid

$10,000.00 to a witness to secure false testimony at a federal

evidentiary hearing in this case (ironically for the purpose of allowing

Pouncy to demonstrate his actual innocence), testimony that he (the

witness) – not Pouncy – committed the crimes underlying this habeas

action.  (*See generally* R. 238, Motion to Dismiss, Page ID # 11108).  The

District Court took these allegations seriously enough to refer this

matter to the United States Attorney for the Eastern District for

investigation.[13]  And when an Assistant Attorney General began to ask

---

[12] The most that the District Court says in its Opinion & Order
conditionally granting habeas relief concerning the Warden's expressed
concerns with Pouncy's credibility is that "Respondent has offered many
reasonable bases for (1) questioning Pouncy's overall credibility and (2)
disbelieving Pouncy's current testimony that he would have accepted a
plea deal if properly advised by counsel …."  (R. 401, Op. & Ord., Page
ID # 14425).  In addition, in granting the Warden's motion for stay, the
District Court concedes that "Respondent's argument [concerning
Pouncy's credibility] is a serious one."  (R. 453, Ord. Page ID # 14963).

[13] These allegations ultimately led to the United States Attorney for the
Eastern Michigan recently (post-habeas grant) bringing the following

50

Pouncy about this egregious conduct during the federal evidentiary hearing on the *Strickland/Lafler* claim, Pouncy asserted his Fifth Amendment privilege against self-incrimination. (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13680). In its post-evidentiary hearing briefing, the Warden argued that the District Court could – and should – have taken an adverse inference from this assertion of the Fifth Amendment in this civil proceeding, citing *Baxter v. Palmiagano*, 425 U.S. 308, 318 (1976). But the District Court failed to discuss Pouncy's assertion of the Fifth Amendment in its analysis of Pouncy's credibility, nor does it mention his attempt to present perjured testimony in the section of its opinion discussing Pouncy's credibility. Such omissions are puzzling given their significance to satisfying the high legal standard for the grant of habeas relief, even on de novo review.

And how do these allegations of bribery and perjury relate to Pouncy's credibility about whether he would have accepted a plea offer prior to his trial? If Pouncy was willing to bribe someone to commit

---

charges against Pouncy: Witness bribery, contrary to 18 U.S.C. § 201(b)(4); perjury, contrary to 18 U.S.C. § 1623; conspiracy to a tamper with a witness, contrary to 18 U.S.C. § 271; and aiding and abetting, contrary to 18 U.S.C. § 2. The charges are currently pending.

perjury in a federal court on his behalf, and then plead the Fifth

Amendment when asked about this conduct, it is not a great leap in

logic that Pouncy would lie to the District Court during a federal

evidentiary hearing when claiming that he would have accepted a plea

in state court.

But Pouncy's misconduct before the District Court is not limited to

his subornation of perjury.  The District Court previously granted

Pouncy habeas relief and released him on bond pending the Warden's

appeal.  Almost immediately, Pouncy began engaging in misconduct,

not the least of which was a clear attempt to intimidate the state trial

judge and his staff who presided over his trial.  (*See* R. 109, Emergency

Motion, Page ID # 7591-7615.)  Based on these egregious acts, the

Warden asked the District Court to revoke Pouncy's bond.  (*Id.*)  The

District Court declined.  (R. 114, Ord., Page ID # 7634-7636.)  But

Pouncy took it a step further by committing weapons offenses while on

bond.  (R. 117, Petition, Page ID # 7698-7699.)  At this point, the

District Court did not hesitate to revoke Pouncy's bond and issue an

arrest warrant.  (*Id.*, R. 118, Arrest Warrant, Page ID # 7700.)  The

District Court has already used Pouncy's misconduct during the

pendency of this habeas action as one of the reasons to deny him bond *pending* habeas.  (R. 307, Ord.,  Page ID # 12415, 12419–12420.)  So has this Court.  *Pouncy v. Palmer*, 993 F.3d 461 (6th Cir. 2021).[14]

Pouncy has other problems.  Prior to trial, he wrote a letter to the prosecuting attorney in the underlying criminal case in this matter that he was "not trying to get no plea or nothing …," that he was innocent of the charges against him,  and telling the prosecutor that he would "see [him] at court" where he was going to file a motion to dismiss "because I'm innocent."  (R. 387, Warden's Exh. D at Evidentiary Hr'g, Page ID # 14144-14146.)  Not surprisingly, Pouncy testified at the evidentiary hearing that he wrote this letter believing that it would compel the prosecution to in fact extend a better plea offer to him.[15]  (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13671-13672.)  But what was surprising was that the District Court apparently believed this explanation for the

---

[14] Likewise, Pouncy's misconduct during the pendency of this habeas action factored in the District Court's and this Court's decisions not to grant Pouncy bond during this pendency of this second appeal.  (R. 453, Ord., Page ID # 14966) ; *Pouncy v. Palmer*, Sixth Circuit Case No. 21-2759, Document 25-2, Page 4.

[15] This is certainly not how the prosecutor read the letter.  He thought it was not an attempt to manipulate him into offering Pouncy a plea, but to dismiss the charges altogether.  (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13580.)

letter.[16]  He also wrote letters to two of his victims saying, "I'm not the person who has done these things to you" (R. 387, Warden's Exh. D at Evidentiary Hr'g, Page ID # 14148) and to a detective in the matter saying, "I really am innocent in this matter" and says that he did not need to commit these crimes because he sold drugs and had "plenty of money." (*Id.* at Page ID # 14151.)

And then there is Pouncy's statement just before trial began, which is perhaps the best evidence of Pouncy's then intent (and which contradicts his federal evidentiary hearing testimony).  As noted earlier (and which bears repeating), Pouncy announced to the court on the record: **"I will never take the plea to nothin' I did 'cause I didn't do it."** (R. 8-7, 1/24/06 Tr., Page ID # 478, emphasis added.)  Thus, the state court record indicates unequivocally that Pouncy did not reject the plea offer because it was not favorable enough, or because trial counsel

---

[16] The District Court tried to discount the importance of this and other statements by Pouncy (e.g., in court on the day of trial) by stating that they "did not reflect his actual state of mind.  Instead, Pouncy honestly believed that by asserting his lack of interest in a plea offer, he was setting up for – and strengthening his hand in – plea negotiations.  This belief may seem illogical.  But Pouncy was a misguided eighteen-year-old who did not know any better and whose experience seemed to suggest to him that playing hardball led to good plea offers." (R. 401, Op. & Ord., Page ID # 14424−14425.)

misadvised him; *he rejected it because he claimed he was innocent and, as such, would never accept a plea offer of any kind.*

The District Court attempts to minimize this statement by Pouncy by stating that it was "in large measure, 'rooted in misinformation gleaned from [his] counsel's faulty advice' about his exposure at trial, and that makes Pouncy's stated resistance to a plea deal 'an unreliable metric of reasonably probable outcomes'." (R. 401, Op. & Ord., Page ID # 14425, quoting *Byrd v. Skipper*, 940 F.3d at 259.)

But, unlike the clear instances of misinformation and faulty advice in *Byrd*, the best that the District Court can do in this case is suggest that there is more that Breczinski should have said to Pouncy concerning the tenuous nature of the sentencing guidelines—guidelines that were not even relevant to the plea offer being made to Pouncy which he soundly rejected. More importantly, however, in being so dismissive of Pouncy's own on-the-record statements at the time of trial, the District Court ignored one of this Court's dictates in *Byrd*, that "when considering a defendant's *post hoc* assertions, we should look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 258−259, in part quoting *Lee v. United States*, 137

S. Ct. 1958, 1967 (2017) (internal quotation marks omitted). And what better contemporaneous evidence is there than Pouncy's own on-the-record statements just before the start of trial?

In sum, Pouncy's self-serving testimony at the federal evidentiary hearing on his *Strickland/Lafler* claim that he would have accepted a plea offer rather than go to trial is without any real basis. In other words, a claim by a career criminal who has managed to get himself in as much trouble while in prison (not the least of which includes the subornation of perjury in this very federal habeas matter) as when he was out of prison that he would have accepted a plea offer should have been viewed as wholly incredible by the District Court. This is especially so when that testimony is when considered against the most reliable contemporaneous evidence of Pouncy's intent, which was his own statement on the record that he would never take a plea offer.

Two other witnesses provided contemporaneous evidence of the events at issue: Investigator Leonard Accardo, whose testimony was contradictory, and Genesee County Assistant Prosecuting Attorney Christopher Larobardiere, whose testimony was credible and consistent. Both witnesses are discussed, *infra.*

### 2. Investigator Leonard Accardo's inconsistent, contradictory testimony at the federal evidentiary hearing does not establish the requisite prejudice.

Equally incredible was the testimony of the investigator – Leonard Accardo – hired by Breczinski to assist him in his pre-trial preparation for the underlying criminal cases against Pouncy. The District Court also found investigator Accardo's testimony that Pouncy was in fact open to a plea prior to trial to be credible. (R. 401, Op. & Ord., Page ID # 14426, n. 20). But Accardo testified inconsistently that he *did not* have a conversation with Pouncy regarding the possibility of accepting a plea (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13512, 13527) and then that he *did* have such a conversation with Pouncy (*Id.* at Page ID # 13512, 13525, 13528). Significantly, Accardo admitted that in preparing for the evidentiary hearing in this Court, he talked to Pouncy who told him that he (Pouncy) remembered the two of them having a conversation about a plea and that he was "interested" in a

plea. (*Id.* at Page ID # 13538.)   The District Court clearly erred in

finding Accardo's inconsistent and contradictory testimony credible.[17]

> **3.    The testimony of the state prosecutor,
> Christopher Larobardiere, at the federal
> evidentiary hearing does not support the District
> Court's finding that Pouncy was prejudiced.**

Finally, the District Court significantly misunderstands the

testimony of the prosecutor – Christopher Larobardiere – in its findings

of fact.  In particular, the District Court misapprehends Larobardiere's

willingness to engage in further plea negotiations with Pouncy following

his rejection of the initial plea offer made to Pouncy.

In his testimony, Larobardiere confirms that there was no

prejudice here.  He outlined four key points that demonstrated that

improbability that there might have been a plea here.

***First***, *Killebrew* agreements in Genesee County are rare.  As

Larobardiere testified, in Genesee County, prosecutors "don't do a whole

lot of *Killebrew* [sentencing agreements] or guideline agreements"

adding that, while it was an option, "I would say we use more dismissal

---

[17] This District Court recognized that the Warden has made
"reasonable arguments" as to why the Court should not find Accardo's
testimony reliable, *see* R. 401, Op.& Order, Page ID # 14426, n. 20.)

of counts." (R. 371, 1/18/21 Evidentiary Hr'g Tr., Page ID # 13551.)  He further noted it would be particularly unusual for him (or his office) to enter in to a *Killebrew* agreement without additional conditions being placed in the agreement for the benefitting defendant (e.g., that defendant testifying against codefendants).  (*Id.* at Page ID # 13566.)

**Second**, Larobardiere explained that Pouncy claimed he was innocent and thus would not take a plea.  Well before the trial date and any discussion of the sentencing guidelines, Pouncy was frequently telling Breczinski that he did not commit the charged offenses and thus that he was "unwilling to plead" and "wants a trial" (a "continuing theme" per Larobardiere) which Breczinski would then tell Larobardiere about at pre-trial hearings or when he would run into him at the courthouse.  (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13576, 13586).[18]  Contrary to what the District Court said, these statements by Pouncy *are* in fact "an accurate indicator of whether

---

[18] Nonetheless, according to Larobardiere, Breczinski brought to his attention a potential problem with the forensic evidence in this case (a shoeprint found at the scene of the crime that did not match the size of Pouncy's footwear).  (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13581−13582.)  So clearly Breczinski was at least implicitly advocating for a plea agreement that took such facts into consideration.

[Pouncy] would have been interested in a plea ….." (R. 401, Op. & Ord.,
PageID # 14420), as they came directly from Breczinski.

*Third,* Larobardiere testified how unlikely it was that the
prosecution would have accepted any possible counter-offers that
Breczinski could have made.  In particular, Larobardiere said that, if
Breczinski had counter-offered with a plea agreement that dropped
counts and/or included a *Killebrew* agreement concerning the
sentencing guidelines, such an offer would not "make sense" and "we
would just reject it."  (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID
# 13584−13585.)

When asked by the District Court whether, had he discovered on
the date of sentencing (if Pouncy had pleaded guilty) that the scoring of
the final sentencing guidelines was substantially higher than
mentioned just before trial, and Breczinski at that time would have
asked him if he would enter into a *Killebrew* agreement at that time to
account for the change in the earlier predicated guidelines range,
Larobardiere said:  "I would not probably step in and enter into any sort
of Killebrew or a reduction based on this crime and the defendant's
behavior …."  (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13597.)

True, Larobardiere testified that if a counteroffer were simply a matter of changing "*a few months on the guidelines*," he/his office would "probably" not reject it.  (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 13600−13601; emphasis added.)  He also seemed to say later (in response to pointed questioning by the District Court which was posing a hypothetical to him) that he would have accepted a counter-offer that included a *Killebrew* sentencing agreement (to keep the minimum sentence within the projected 135-225 sentencing guideline range).  *But* Larobardiere prefaced that testimony with the strong caveat that "we wouldn't have given him a plea deal – or a plea reduction and also a *Killebrew* in this set of facts."  (*Id.* at Page ID # 13619−13620.)  This context is missing from the District Court's findings of fact.

**Fourth,** Larobardiere explained that he does not believe that the trial judge would have gone along with the kind of plea/sentencing agreement that Pouncy said he would have accepted.  Larobardiere noted that, while the court might have been initially inclined to go along with such an agreement, based on the sentence eventually imposed and what the trial court said at sentencing, "he [the trial court] would probably back out of it at sentencing" calling such an eventual

rejection of the agreement a "high probability" (even without considering the things that trial court observed during the trial).[19]  (*Id.* at Page ID # 13620−13622.)

On a related point, while the District Court is correct that Larobardiere testified that *he* would have allowed Pouncy to plead no-contest to the charges against him (R. 371, 1/8/21 Evidentiary Hr'g Tr., Page ID # 119), such a plea is *not* contingent on the prosecutor's consent.  Rather, no-contest pleas can only move forward with the consent of the trial court.  *See* Mich. Ct. R. 6.301(B); Mich. Ct. R. 6.302(D)(2)(a).  In other words, there is no evidence on this record that the trial court would have allowed a no-contest plea in this case, which the District Court made a key component of the hypothetical plea agreement that it discussed with Larobardiere.  Whether the trial court would have accepted a plea offer containing such a term (the second

---

[19] It is puzzling then how the District Court reached the conclusion that "[t]he trial court would have accepted [the outlined plea/sentence agreement … [a]nd would have imposed a sentence consistent with that plea deal."  (R. 401, Op. & Ord., Page ID # 14422.)

component necessary to demonstrate prejudice under *Lafler*) is highly questionable and certainly not a given.[20]

***

These are not minor points or mere quibbling with the details. The details – and underlying context – of Pouncy's, Accardo's, and Larobardier's testimony *matter*. The District Court based its grant of conditional habeas relief on Pouncy's *Strickland/Lafler* claim by utilizing findings of fact that are clearly erroneous based on a careful review of the testimony of these witnesses, which in turn cause at least two of the three components of prejudice for purposes of a *Strickland/Lafler* claim not to be met. This merits reversal of this second grant of conditional habeas relief in this case, even if the claim was properly reviewed de novo.

---

[20] And – in Michigan – there does not appear to be anything which permits a defendant to plead *guilty* while still maintaining his innocence, as may be the situation in other states. *See People v. Wolff*, 389 Mich 398 (1973), citing *North Carolina v. Alford*, 400 U.S. 25 1970). Perhaps this explains the District Court's insertion of the prospect of a no-contest plea into his hypotheticals at the federal evidentiary hearing as it was the only way that a defendant – like Pouncy – who was insisting that he was innocent could tender a plea, but not have to admit his guilt in the process.

63

## CONCLUSION AND RELIEF REQUESTED

For the reasons state above, the State asks this Court to reverse the District Court's decision to grant the writ and otherwise deny Pouncy's petition for writ of habeas corpus.

Respectfully submitted,

Dana Nessel
Michigan Attorney General

Ann M. Sherman (P67762)
Solicitor General

/s/ John S. Pallas
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Trials and Appeals
Division
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7650
pallasj@michigan.gov

Dated:  April 27, 2023

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding

the part of the document exempted by Federal Rule of Appellate

Procedure 32(f), this brief contains no more than 13,000 words.  This

document contains 12,775 words.

2.     This document complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and the type-style

requirements of Federal Rule of Appellate Procedure 32(a)(6) because

this document has been prepared in a proportionally spaced typeface

using Word 2013 in 14-point Century Schoolbook.

/s/ John S. Pallas
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Trials and Appeals
Division
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7650
pallasj@michigan.gov

## CERTIFICATE OF SERVICE

I certify that on April 27, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

/s/ John S. Pallas
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Trials and Appeals
Division
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7650
pallasj@michigan.gov

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Respondent-Appellant/Cross-Appellee, per Sixth Circuit Rule

28(a), 28(a)(1)-(2), 30(b), hereby designated the following portions of the

record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Transcript | 01/24/2006 | R. 8-7 | 476-478 |
| Motion for Relief from Judgment | 12/14/2009 | R. 8-20 | 2019-2073 |
| Order Denying Motion for Relief from Judgment | 11/03/2010 | R. 8-37 | 3137-3164 |
| Michigan Court of Appeals 269298 - Opinion | 12/27/2007 | R. 8-44 | 3233-3236, 3265 |
| MSC - Application for Leave to Appeal | 02/05/2008 | R. 8-47 | 4065, 4147-4204 |
| COA - Application for Leave to Appeal | 07/13/2012 | R. 8-48 | 4227-4273 |
| Application for Leave to Appeal | 10/11/2012 | R. 8-49 | 4440-4511 |
| Affidavit of Atty Breczinski | 11/30/2015 | R. 71 | 6650-51 |
| Amended Opinion & Order | 01/11/2016 | R. 76 | 6848-6880 |
| Emergency Motion | 03/28/2016 | R. 109 | 7591-7615 |
| Order | 05/06/2016 | R. 114 | 7634-7636 |

| | | | |
|---|---|---|---|
| Order on Petition for Action | 09/21/2016 | R. 117 | 7698-7699 |
| Arrest Warrant | 09/21/2016 | R. 118 | 7700 |
| Motion to Dismiss | 05/29/2019 | R. 238 | 11108 |
| Supplemental Merits Brief | 05/31/2019 | R. 239 | 11374 |
| Ans. To Pet's History of Remaining Habeas Claims | 01/08/2018 | R. 170 | 8494-8495 |
| Pet's Opening Brief in Support of Remaining Unsolved Habeas Claims | 05/11/2020 | R. 300 | 12307 |
| Order | 05/15/2020 | R. 307 | 12415, 12419-12420 |
| Rsp Brief to Pet's Opening Brief in Support of Remaining Unresolved Habeas Claims | 06/11/2020 | R. 321 | 12583 |
| Evidentiary Hearing Transcript | 01/08/2021 | R. 371 | 13512, 13525, 13528, 13538, 13551, 13580-85, 13671-13672, 13576, 13586, 13597, 13600-01, 13680, 13619-22 |
| Video Hr'g on Petition | 01/27/2021 | R. 372 | 13788 |
| Warden's Ex D at Evidentiary Hrg | 03/01/2021 | R. 387 | 14144-14148, 14151 |
| Opinion & Order | 06/28/2021 | R. 401 | 14368-14490 |
| Notice of Appeal | 07/26/2021 | R. 409 | 14627-14628 |

| Motion to Stay | 10/13/2021 | R. 427 | 14713-14738 |
| Notice of Appeal | 12/15/2021 | R. 446 | 14941-14942 |
| Order | 02/16/2022 | R. 453 | 14956-14986 |

2013-0061353-H/POUNCY, OMAR/BRIEF

69